IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **TRUDY GRIFFIN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No.: 3:08-CV-828 |
| v. ) | Judge Trauger |
| ) | |
| **DARRELL HARDRICK,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM

Pending before the court is the defendant's Motion for Summary Judgment (Docket No. 11), to which the plaintiff has responded (Docket No. 21), and the defendant has replied (Docket No. 30). For the reasons described herein, the defendant's motion will be granted.

## BACKGROUND

This case arises out of an incident that occurred when the plaintiff, Trudy Griffin, was detained at the Davidson County Criminal Justice Center ("DCCJC") on August 20, 2005.[1]

Earlier that day, Griffin had accompanied her son while he picked up his children at the

---

[1] Unless otherwise noted, the facts are drawn from the Plaintiff's Reply to Defendant's Statement of Undisputed Material Facts (Docket No. 24), the Defendant's Responses to Plaintiff's Statement of Material Facts in Dispute (Docket No. 29), and related affidavits and exhibits. Although the facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matushita Elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.,* 224 F.3d 797, 800 (6th Cir. 2000).

1

children's maternal grandmother's house.  (Docket No. 11 Ex. 2 at 4.)  The plaintiff's son's ex-wife, Chrystal Griffin, had previously obtained a restraining order against the plaintiff's son, and, when the plaintiff and her son arrived at the house, Chrystal Griffin called the police to report a violation of the restraining order.  (*Id*. at 4-5.)

Once the police officers arrived at the scene, the plaintiff attempted to tell the officers that Chrystal Griffin was not supposed to "be around [that] house."  (Docket No. 11 Ex. 2 at 6.)  The officers informed the plaintiff that they did not want to discuss the matter with her, but the plaintiff continued to vigorously explain her version of the situation to the officers.  (*Id*. at 7.)  Unable to obtain cooperation from the plaintiff, the officers placed the plaintiff under arrest, but she put up some resistance and told the police officers that she was not going to jail.  (*Id*. at 7-8.)  In order to control the plaintiff and to enable the officers to put the plaintiff's arms in handcuffs, the officers pinched the plaintiff's arms.  (*Id*. at 8.)  After the officers were able to get the plaintiff in the police car, she slid around the back seat and continued doing so during the transport from the house to the DCCJC.  Apparently during this time, the plaintiff sustained bruising to her arms and back.[2]  (*Id*. at 8-9.)  The plaintiff arrived at the DCCJC without additional incident, was booked, and was placed into a cell.

While in a cell at the DCCJC, Griffin asked the officers on staff if she could go to the nurses' station for treatment of her arm bruises.  The officers granted the request, opened the cell door, and Griffin walked down the hall to talk to the nurse.  At the nurses' station, Griffin complained to the nurse about her back and arms, and she demanded to be transported to a

---

[2]When Griffin was initially booked, the nurse at the DCCJC discovered red welts on Griffin's back and bruises on Griffin's arms from the arrest.  (Docket No. 27 at 1.)

2

hospital. The nurse informed Griffin that this was not possible, but Griffin continued to talk to the nurse for several minutes about her bruising, speaking in a raised voice. (Docket No. 11 Ex. 2 at 15.)

The defendant, officer Darrell Hardrick of the Davidson County Sheriff's Office, was on duty at the DCCJC as the sergeant overseeing the booking area. Hardrick observed Griffin acting in a non-compliant manner toward the nurse. He approached Griffin, Griffin claims, threatening her. Specifically, Griffin testified in her deposition that Hardrick told Griffin that she was "going to live in his hell" and that she "was his bitch." (Docket No. 11 Ex. 2 at 17.) While the defendant does not specifically deny that threats were made, there is a video of the incident, and the video, which has no sound, does not depict actions consistent with such hostility.[3] (Docket No. 11 Ex. 5 at 15:08:45-15:09:01.) Rather, during their discussion, Hardrick stood still in front of Griffin with his hands to his sides, while Griffin forcefully pointed at Hardrick and generally acted in an aggressive and defiant manner. (*Id.*)

The video shows that, after this brief discussion, Griffin attempted to walk away from Hardrick and the nurses' station. (Docket No. 11 Ex. 5 at 15:09:01.) Griffin claims that she did this because she was scared by the threats Hardrick had made and because she wanted to return to her nearby holding cell. (Docket No. 11 Ex. 2 at 16.) The video shows that, as Griffin attempts

---

[3]While, as noted above, a motion for summary judgment typically requires the court to view all facts in the light most favorable to the nonmoving party, the existence of a video depicting the incident can alter this standard. A video that contains clear and relevant information about an incident should be used and relied upon by the court, even when contradicting the facts stated by the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). This case contains video footage of the incident from security cameras at the Davidson County Criminal Justice Center. (*See* Docket No. 11 Ex. 5.) Thus, this video will be relied upon for facts relevant to the matter before the court.

3

to walk away from Hardrick, Hardrick takes hold of Griffin's right arm. (Docket No. 11 Ex. 5 at 15:09:10.) The parties agree that, when Hardrick first took hold of Griffin's arm, she tried to pull her arm away, telling him to "watch her [bruised] arms." (Docket No. 24 at ¶ 7.) As Hardrick continued to hold onto Griffin's right arm, Griffin forcibly resisted, using her left arm to push away from him. (Docket No. 11 Ex. 5 at 15:09:13.) Another officer, Sergeant Pamela Rutledge, appeared on the scene and grabbed Griffin's left arm. (Docket No. 11 Ex. 3 at 4; Docket No. 11 Ex. 5 at 15:08:52; 15:09:13.) At this point, with one officer on each side of Griffin, a general fracas ensued, in which Griffin thrashed her arms, attempting to pull and push away from the officers' grasps. (*Id*. at 15:09:13-15:09:20.)

As Griffin continued to forcefully jerk her arms in an attempt to break free from the officers' grasps, Hardrick attempted to bring Griffin under control by tripping her. (Docket No. 11 Ex. 5 at 15:09:19-15:09:23.) His first attempt failed, but his second was successful, and Griffin fell to the ground. (*Id*. at 15:09:20-15:09:23.) Rutledge, apparently accidentally, fell onto Griffin's leg, breaking Griffin's tibia. (*Id* at 15:09:24; Docket No. 24 at ¶ 12.)

After falling onto the floor, Griffin complained that her leg was broken, but a DCCJC employee [not a defendant] told Griffin "her leg wasn't broke," and proceeded to drag Griffin to another holding cell area. Firefighters were called, and they wrapped Griffin's leg and brought her to Meharry Medical Center. (Docket No. 11 Ex. 2 at 22.) Griffin's broken tibia required a surgery that used eight screws and a plate to piece her leg back together. (*Id*. at 24.)

Griffin filed this lawsuit originally in the First Circuit Court for Davidson County, Tennessee, claiming that Hardrick tripped her gratuitously. (Docket No. 1 at 1.) Defendant Hardrick removed the suit to this court, and has now moved for summary judgment. (*Id*.; Docket

4

No.11.)

## ANALYSIS

The plaintiff brought this suit under 42 U.S.C. § 1983, alleging that the defendant's actions violated her rights under the Fourth Amendment to the Constitution. Subsequent briefing has made it clear, however, that, because the incident occurred while the plaintiff was a pretrial detainee, the plaintiff's claim is actually a Section 1983 claim that asserts rights under the Fourteenth Amendment. (*See* Docket No. 11 at 2; Docket No. 22 at 3.) In addition to her constitutional claim, the plaintiff also alleges a battery claim arising under Tennessee state law.

**I.      Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a

5

genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

**II. Plaintiff's Claims**

The plaintiff brings this suit under 42 U.S.C. § 1983, alleging that the defendant's actions while she was a pretrial detainee at the DCCJC violated her rights under the Fourteenth Amendment. (Docket No. 1 at 1; Docket No. 11 at 2; Docket No. 22 at 3.) Specifically, the plaintiff alleges that the takedown maneuver employed by the defendant constituted excessive force in violation of her Fourteenth Amendment rights. The plaintiff also alleges a common law

6

battery claim against the defendant pursuant to the Tennessee Government Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq*.

### A. Fourteenth Amendment Claim

The defendant asserts that he did not use excessive force, and that, even if there is a fact question as to whether the force was excessive, he is entitled to qualified immunity. (Docket No. 11.)

In this case, Griffin was a pretrial detainee. A pretrial detainee is a person who has been charged with a crime but who has not yet been tried on the charge, and who is legitimately incarcerated prior to the determination of guilt or innocence. *Bell v. Wolfish,* 441 U.S. 520, 523 (1979). Griffin had been arrested and incarcerated, but she had not been convicted of a crime at the time of the incident. (*See* Docket No. 11 Ex. 2 at 10-11.) Pretrial detainees retain at least the same constitutional rights as enjoyed by convicted prisoners. *Bell,* 441 U.S. at 545. A pretrial detainee's constitutional protections derive from the Fourteenth Amendment's Due Process Clause. *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989). The Due Process Clause affords pretrial detainees, like the plaintiff, protection from "conditions [that] amount to punishment." *Bell,* 441 U.S. at 535. The Sixth Circuit has stated that a pretrial detainee "is entitled to the same protection under the Eighth Amendment by way of the Fourteenth Amendment's Due Process Clause." *Watkins v. Evans*, Nos. 95-4162, 95-4341, 1996 WL 499094, at *2 (6th Cir. Sept. 3, 1996) (unpublished opinion) (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

The Eighth Amendment "forbids the infliction of 'cruel and unusual punishments.'" *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (quoting U.S. Const. amend. VIII). The test under the Eighth Amendment's cruel and unusual punishment clause is whether the defendant

7

caused the "unnecessary and wanton infliction of pain." *Watkins,* 1996 WL 499094, at *2 (citing *Whitley*, 475 U.S. at 319; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)). The Supreme Court has held that "unnecessary and wanton" inflictions of pain are those "totally without penological justification." *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002).

In determining whether a defendant caused "unnecessary and wanton infliction of pain," the court must "determine whether the force was applied in a good-faith effort to maintain or restore discipline, or 'maliciously and sadistically' to cause harm." *Watkins,* 1996 WL 499094, at *2 (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). This test consists of both an objective and a subjective component. *Id*. (citing *Farmer v. Brennan*, 114 S.Ct. 1970, 1977 (1994)). The objective component requires that the pain be serious, while the subjective component requires that the conduct be wanton. *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991); *Moore*, 2 F.3d at 700). Here, the objective component of the "unnecessary and wanton" test is not in dispute. Hardrick has conceded that Griffin "suffered a serious injury following the takedown maneuver." (Docket No. 13 at 5.)

The remaining issue concerns the subjective component of the test; that is, whether Hardrick employed the takedown procedure wantonly. *See Watkins,* 1996 WL 499094, at *2. In determining whether the force was applied wantonly, the court should consider factors such as the perceived necessity for the application of force and the proportion between the amount of force used and the necessity for the force. *Whitley*, 475 U.S. at 321. This standard does not ask whether, in hindsight, the use of force was absolutely necessary. *Id*. Rather, the key issue is "whether the use of force could plausibly have been *thought* necessary, or instead, [whether it]

8

evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id*. (emphasis added).

The court finds that a reasonable jury could not conclude that Hardrick acted in a sufficiently wanton manner. While Hardrick does not deny that he made threatening comments toward Griffin, the video does not portray the discussion between Hardrick and Griffin as hostile. Instead, Hardrick appears calm and non-aggressive, and it is Griffin who acts belligerently toward Hardrick. In fact, Hardrick never infringed on Griffin's space, touched, or grabbed her until she attempted to walk away from him. While the court does not agree with the defendant's contention that such threats are irrelevant (Docket No. 29 ¶ 1), as they could indicate a "sadistic" or "malicious" state of mind at the time of the physical encounter, the marked calmness of the defendant's demeanor portrayed in the video indicates that the court should not afford significant weight to the plaintiff's unrebutted allegations that such threats were made.

As to the actual takedown maneuver itself, the evidence establishes that, when Hardrick tripped the plaintiff, he did so in a "good faith effort to restore discipline" and that "the use of force could plausibly have been thought necessary." *See Watkins*, 1996 WL 499094, at *2; *Whitley*, 475 U.S. at 321. To review, the video establishes that Griffin was acting defiantly toward Hardrick and Rutledge during the incident. She had created a disturbance outside of the nurses' station, argued with Hardrick, and attempted to walk away from Hardrick. After Hardrick restrained her by holding onto her right arm, she tried to push away from him using her left arm until Rutledge was able to take control of that arm. Even then, with an officer holding each arm, Griffin continued to jerk her arms, act defiantly, and attempt to walk away.

Hardrick accurately testified in his deposition that, at this moment, Griffin was

9

"struggling" with the officers, as the video clearly reveals. (Docket No. 11 Ex. 5 at 15:09:15-15:09:20; Docket No. 28 at 5.) He perceived Griffin as "noncompliant . . . actively aggressive and combative."[4] (Docket No. 28 at 5.) Hardrick believed that it was "necessary to conduct a leg sweep [tripping maneuver]" on Griffin in order to put her in a "felony prone position" (face forward on the ground) so that she could not use her legs or arms to continue to resist. (*Id.*; *See* Docket No. 11 Ex. 4 at 5.)

No reasonable jury could conclude that, at the time Hardrick tripped Griffin, he was acting wantonly. Rather, the evidence establishes that Hardrick "plausibly thought" that a takedown was necessary to bring Griffin under control and that, as such, a jury could only conclude that Hardrick acted in "good faith to restore order" at the time he tripped Griffin. Because no reasonable jury could conclude that Hardrick acted wantonly in violation of Griffin's Fourteenth Amendment rights, a discussion of qualified immunity is unnecessary.

### B. Plaintiff's State Law Claim

The plaintiff alleges a common law battery claim against the defendant pursuant to the Tennessee Government Tort Liability Act (GTLA), Tenn. Code Ann. § 29-20-101, *et seq.* (Docket No. 1 at 1; Docket No. 22 at 6.) The defendant has moved for summary judgment on this claim, asserting that he did not commit a battery on the plaintiff as a matter of law. (Docket No. 11 at 2.)

---

[4] The plaintiff contends that there is no evidence that, while the officers had control of Griffin's arms, there were orders given to her that she did not obey. (Docket No. 22 at 2 n.1.) While the court agrees that there is no evidence as to what precisely the officers were saying or ordering at that moment, it is clear that Griffin was trying forcefully to get away from the officers and was out of control.

10

Under the GTLA, individual governmental employees may be sued for their intentional torts. *Evans v. City of Etowah*, No. 1:06-cv-252, 2008 U.S. Dist. LEXIS 27275, at *33 (E.D. Tenn. Apr. 2, 2008) (citing *Baines v. Wilson County*, 86 S.W.3d 575, 583 n.5 (Tenn. Ct. App. 2002)). Under Tennessee law, a cause of action for battery against a police officer requires a showing that the officer has caused damage by an excessive and unprovoked use of force. *Butler v. City of Englewood*, No. 1:07-cv-184, 2008 U.S. Dist. LEXIS 82004, at *37 (E.D. Tenn. Aug. 25, 2008) (citing *City of Mason v. Banks*, 581 S.W.2d 621, 626 (Tenn. 1979)). Where a plaintiff asserts a common law battery claim based on the same use of force as a corresponding Section 1983 claim, the court's "analysis regarding [a] Plaintiff's [Section] 1983 excessive force claim applies equally to her Tennessee state law claims for . . . battery." *Id*. at *38. As was set forth in the previous discussion, the defendant is entitled to summary judgment on the Section 1983 claim because no reasonable jury could conclude that he acted wantonly toward the plaintiff when he tripped her, thus establishing that he did not use excessive force. Therefore, summary judgment is equally appropriate on the battery claim.

## CONCLUSION

For the reasons discussed herein, the defendant's motion for summary judgment will be granted.

An appropriate order will enter.

                                                      _____
                                                      ALETA A. TRAUGER
                                                      United States District Judge

11